UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAMBRIA COMPANY LLC,

    Plaintiff,

v.

LAKESIDE SURFACES, INC.,

    Defendant.

Civil No. _____

DEMAND FOR JURY TRIAL

**COMPLAINT FOR PATENT INFRINGEMENT, TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

For its Complaint against Defendant Lakeside Surfaces, Inc. ("Lakeside"), Plaintiff Cambria Company LLC ("Cambria"), states and alleges the following:

**PARTIES**

1. Plaintiff Cambria is a Minnesota limited liability company with its principal place of business at 805 Enterprise Drive East, Suite H, Belle Plaine, MN 56011.

2. Upon information and belief, Defendant Lakeside is a Michigan corporation with its principal place of business at 2265 Black Creek Rd, Muskegon, MI 49444. Lakeside also has locations at 3792 29th Street SE, Kentwood, MI 49512; 2807 Cass Road Suite B1, Traverse City, MI 49684; 12816 Emerson Dr, Brighton, MI 48116; and 6274 Norton Center Dr, Norton Shores, MI 49441.

**JURISDICTION AND VENUE**

3. Cambria's claims arise under the patent and trademark laws of the United States, 35 U.S.C. §§ 1 *et seq,* and 15 U.S.C. §§ 1051 *et seq*. Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Lakeside. Upon information and belief, Lakeside has a physical place of business in this judicial district located at 3792 29th Street SE, Kentwood, MI 49512. Lakeside has also committed the acts complained of herein in the Western District of Michigan, including, but not limited to (a) making, using, selling, or offering for sale the infringing products accused herein; and (b) directing its infringing products at residents in the State of Michigan and in this judicial district. Lakeside distributes its infringing products within this judicial district. Finally, Cambria's claims arise out of or relate to Lakeside's activities in Michigan.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), 1391 and 1400(b) because Lakeside has committed acts of infringement in this judicial district where the infringing products can be found. Lakeside has a regular and established physical place of business in this judicial district located at 3792 29th Street SE, Kentwood, MI 49512. This Court also has supplemental jurisdiction over the Michigan statutory claims for unfair competition under 28 U.S.C. §§ 1338(b) and 1367(a) because these claims are so related to the claims under which the Court has original jurisdiction that it forms the part of the same case or controversy under Article III of the United States Constitution.

**FACTUAL BACKGROUND**

6. Plaintiff Cambria is an industry leader in the design and manufacture of natural quartz surface products. Cambria's natural quartz surface products have a variety of uses in homes and businesses, including, but not limited to, countertops, floor tiles, vanities, fireplace surrounds, wet bars, and showers.

**Cambria's Patents**

7. To protect its designs, Cambria sought and received intellectual property protections in its designs, including, but not limited to, United States Design Patent D780,332 (the "D'332 patent").

8. The D'332 patent issued on February 28, 2017. Cambria is the owner of the D'332 patent by assignment. The D'332 patent is valid, enforceable, and duly issued in compliance with Title 35 of the United States Code. A true and correct copy of Cambria's D'332 patent is attached as **Exhibit A**.

9. The D'332 patent is entitled "An Ornamental Design for a Slab." The sole figure from the D'332 patent is shown below:



10. Cambria's Brittanicca™ quartz surface product from its Marble Collection™ features the design of the D'332 patent.

11. Cambria's Brittanicca product has been marked in accordance with 35 U.S.C. § 287. Cambria marks the D'332 patent number on slab labels and sample labels.

**Cambria's Trademarks**

12. Cambria first publicly displayed the trademark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" as signage over the doors of its manufacturing and fabrication

facilities in LeSueur, MN as early as July 2014. Cambria has displayed its trademark continuously in that location since that time.

13. Beginning in 2014 and continuously since that time, Cambria has similarly displayed its trademark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" as signage (1) over the doors of its processing plant in Le Sueur, MN; (2) over the doors of its corporate headquarters and fabrication shop in in Belle Plaine, MN; (3) over the doors of its fabrication shop in Indianapolis, IN; and (4) over the doors of its fabrication shop in Cleveland, OH. Cambria has displayed its trademark continuously in those locations since that time.

### Lakeside's Activities

14. Defendant Lakeside purchases surface products from manufacturers such as Cambria, fabricates the product in accordance with the specifications provided by its customers, and then sells the fabricated product to retailers, builders, designers and commercial firms as well as local kitchen and bath stores. In fact, Lakeside purports to be "the largest fabricator and installer of countertop materials in the Midwest." About Us, Lakeside Surfaces, Inc. (last visited 6.1.2020), available at https://lakesidesurfaces.com/about/.

15. For years, Lakeside distributed Cambria's products in Michigan. As part of that relationship, Lakeside's employees would routinely visit Cambria's facilities and corporate headquarters in Minnesota. As just one example, on February 20, 2015, Lakeside's CFO Daniel Foy visited Cambria's processing plant in Le Sueur, MN for the purpose of touring Cambria's manufacturing facility. Prior to participating in the tour of the Cambria facility, Mr. Foy executed Cambria's Visitor Confidentiality Agreement.

16. Upon information and belief, Mr. Foy viewed Cambria's trademark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" either before, during or after his tour of Cambria's facilities on February 20, 2015.

17. On August 20, 2015, Lakeside applied for trademark protection for the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD." As part of its trademark application, Lakeside represented to the United States Patent and Trademark Office that the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD" was first used at least as early as August 1, 2015 and was first used in commerce at least as early as August 15, 2015.

18. As part of its trademark application, Lakeside filed a declaration under oath stating it was the owner of the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD." In that same declaration, Lakeside represented to the United States Patent and Trademark Office that "to the best of [its] knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce . . . " Those statements were false.

19. To support its application, Lakeside submitted the following photo of a Lakeside van using the phrase "The Finest Countertop Makers in the World" positioned above a Cambria logo:



20. Nowhere in Lakeside's trademark application or in subsequent prosecution did Lakeside reference the fact that Cambria had been using the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" since at least July 2014, including during the time when Lakeside's CFO personally toured Cambria's facilities where Cambria's mark was being used.

21. The United States Patent and Trademark Office issued United States Trademark Number 4,957,640 on May 10, 2016 for the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD." The mark was awarded to Lakeside Surfaces, Inc.

22. Since the time of its trademark application, Lakeside has used the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" in commerce to advertise its products and services. As one example, Lakeside posts "Our motivation" on its Instagram account "to be the *Finest Countertop Makers in the World*™ Thank you for being a valued customer!" *See* https://www.instagram.com/p/BUKFH7VjwP_/?fbclid=IwAR1joxIm86o94ZUKwp4e7lQaMe3fh0E1srWtyYgyo8_ehQb--_gGqQoFAcw Lakeside employees have also used the mark in press interviews. See https://www.stoneworld.com/articles/89586-lakeside-surfaces-focusing-on-quality-and-customer-service

23. Cambria's business relationship with Lakeside ended in 2018 after Lakeside began selling products from Cambria's competitors including Aurea Stone, 4Elements, MetroQuartz, and LG Viatera. The end of that relationship resulted in litigation filed by Lakeside against Cambria in this district. *See* Case No. 1:18-cv-00110-JTN-ESC.

24. Upon information and belief, Lakeside recently began to offer for sale and sell "Lakeside Exclusive Designs – Limited Edition" "Calacatta Oceania" product, which Lakeside refers to as "Best Seller." Lakeside offers for sale the Calacatta Oceania product through at least the following website: https://www.lakesidesurfaces.com/product/calacatta-oceania/.

6

25. Lakeside's Calacatta Oceania product features the claimed design of the D'332 patent.

26. Cambria has not authorized Lakeside to copy, reproduce, manufacture, duplicate, disseminate, distribute, sell, offer for sale, or display quartz surface products with the design from the D'332 patent.

## COUNT 1: LAKESIDE'S INFRINGEMENT OF THE D'332 PATENT

27. Cambria incorporates by reference, as if fully set forth herein, Paragraphs 1-26 of this Complaint.

28. On February 28, 2017, the United States Patent and Trademark Office duly and legally issued the D'332 patent.

29. The D'332 patent is directed to an "an ornamental design for a slab" as shown in the sole figure of the D'332 patent.

30. Cambria is the owner of the D'332 patent by assignment.

31. Lakeside has made, used, sold, and/or offered for sale within the United States and/or imported into the United States, one or more accused products, including, but not limited to, the Calacatta Oceania product. The design of Lakeside's infringing product, in the eye of the ordinary observer who is familiar with the prior art in the field, appears substantially similar to the ornamental design of the D'332 patent.

32. Lakeside has damaged and will continue to damage Cambria in an amount to be determined at trial.

33. Lakeside has irreparably injured Cambria and such injury will continue unless Lakeside is enjoined by this Court.

## COUNT 2: LAKESIDE'S INFRINGEMENT OF CAMBRIA'S MARK "THE FINEST COUNTERTOP MAKERS IN THE WORLD"

34. Cambria incorporates herein and realleges Paragraphs 1-33 above.

35. As a result of Cambria's continuous use and promotion of the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," consumers associate and recognize the mark as representing a single source or sponsor of services, and therefore the trademark is protectable at common law.

36. Cambria owns and enjoys trademark rights in the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," which rights are superior to any rights that Lakeside may claim in the mark with respect to Lakeside's services. Cambria's mark is strong and inherently distinctive.

37. Lakeside's registration, adoption, distribution, marketing, promotion, offering for sale and sale of services that use the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," which is confusingly similar to Cambria's mark, constitutes an infringement of Cambria's mark in violation of common law.

38. As a result of Lakeside's unauthorized use of the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," the public is likely to believe that Lakeside's services have been created, approved by, or are affiliated with Cambria's. Consequently, Cambria's ability to sell its goods and services is limited due to Lakeside's improper use of the mark.

39. As a result of Lakeside's wrongful conduct, Cambria has suffered and will continue to suffer damages, as well as the loss of control over the goodwill and reputation established by its mark.

40. As a result of Lakeside's wrongful conduct, Cambria has been damaged in an amount not presently ascertained, and such damages will continue and increase unless and until Lakeside is enjoined from continuing its unlawful conduct.

41. Unless Lakeside's unlawful conduct is enjoined, Cambria has no adequate remedy at law for Lakeside's wrongful conduct, because among other things, (a) Cambria's mark is unique and valuable property which has no readily determinable market value; (b) Lakeside's infringement constitutes harm to Cambria cannot be made whole by a monetary award; (c) if Lakeside's wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken or deceived as to the source, origin or authenticity of the services; and (d) Lakeside's wrongful conduct, and the resulting damage to Cambria, are continuing and ongoing, since Lakeside is continuing to use the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD."

## COUNT 3: FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

42. Cambria incorporates herein and realleges Paragraphs 1-41 above.

43. Cambria is the common law owner of all rights and title to, and has valid and protectable prior rights to the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD."

44. Lakeside's actions described above and specifically, without limitation, Lakeside's use in U.S. commerce of the confusingly similar mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" in the distribution, marketing promotion, offering for sale and sale of its services constitutes unfair competition, false designation of origin and false description or representations. Such conduct wrongfully trades on Cambria's goodwill, passes off Lakeside's services in commerce as those of Cambria and limits Cambria's ability to gain revenue through the sale of its own services.

45. As a result of Lakeside's current unlawful use in commerce of the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," which is confusingly similar to the Cambria mark, consumers are likely to be misled, deceived and confused as to the origin, sponsorship or affiliation of Lakeside's services.

46. Lakeside's unauthorized and tortious conduct has deprived and will continue to deprive Cambria of the ability to control consumer perception of its services, placing the valuable reputation and goodwill of Cambria in the hands of Lakeside.

47. By engaging in the aforesaid acts, Lakeside is unfairly competing with and damaging Cambria.

48. Lakeside's conduct in adopting and using the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" is likely to cause confusion, mistake or deception as to the affiliation, connection and associates of Lakeside and its services with Cambria and its services, and as to the sponsorship, origin or approval of Lakeside and its services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### COUNT 4: UNFAIR COMPETITION UNDER MICHIGAN COMMON LAW, M.C. L. § 445.903 *et seq*.

49. Cambria reincorporates herein and realleges Paragraphs 1-48 above.

50. Through its continued use of the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," Lakeside has engaged in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce in violation of M.C.L. § 445.903 *et seq*.

51. Specifically, as a result of the aforesaid acts, Lakeside has (1) caused a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services as prohibited by M.C.L. § 445.903(1)(a); (2) represented that its goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not

have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have as prohibited by M.C.L. § 445.903(1)(c); and (3) represented that its goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another as prohibited by M.C.L. § 445.903(1)(e).

52. Cambria has been damaged by Lakeside's aforementioned actions in an amount to be determined at trial.

**WHEREFORE,** in consideration of the foregoing, Cambria respectfully requests that this Court enter an Order granting the following relief:

A. Enjoining Lakeside and any person acting in concert with it from further infringement of the D'332 patent pursuant to 35 U.S.C. § 283;

B. Declaring that the D'332 patent is valid, enforceable, and infringed by Lakeside; and

C. Awarding Cambria the profits of Lakeside, in accordance with 35 U.S.C. § 289, resulting from Lakeside's infringement of the D'332 patent, actual damages to Cambria in an amount not less than a reasonable royalty for Lakeside's infringement, and other damages and relief allowed as by 35 U.S.C. § 284:

    (i) order the removal from the marketplace and destruction of all of Lakeside's products that infringe the D'332 patent;

    (ii) prohibit Lakeside from further making, using, selling, offering for sale, or importing all of Lakeside's products that infringe the D'332 patent;

    (iii) order an accounting of Lakeside's profits relating to infringement of the D'332 patent;

    (iv) order Lakeside to report to this Court of its compliance with the foregoing within thirty (30) days of judgment; and

D. Declaring this case exceptional under 35 U.S.C. § 285 and awarding Cambria its reasonable attorneys' fees and costs;

E. Awarding Cambria injunctive relief under 15 U.S.C. § 1116(a) and Michigan common law and enjoining Lakeside, its officers, agents, servants, employees and attorneys and those others persons who are in active concert or participation with any of the foregoing persons, from:

    (i) developing, manufacturing, importing, using, marketing, selling or offering for sale, services under the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," or any variant thereof which is a colorable imitation or otherwise likely to be mistaken for or confused with Cambria's mark;

    (ii) otherwise infringing on Cambria's mark or using any other trademarks that are confusingly similar to Cambria's mark;

    (iii) otherwise unfairly competing with Cambria or using any false designations of origin or false description or engaging in any deceptive trade practice, or trading of Cambria's reputation or goodwill, or injuring Cambria's reputation of performing any act which is likely to lead members of the consuming public to believe that any services created, offered for sale or sold by Lakeside are in any manner associated or connected with Cambria or are licensed, sponsored, approved or authorized by Cambria;

F. Finding that United States Trademark No. 4,957,640 is invalid and unenforceable due to Cambria's priority of use and ordering United States Trademark No. 4,957,640 removed from the Federal Register;

G. Declaring that Lakeside and any subsidiaries and affiliates be required to take prompt, affirmative action within thirty (30) days of entry of judgment to:

    (i) withdraw from the public and destroy any advertisements or promotional materials which contain or use the infringing mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," or any confusingly similar marks, in relation to Lakeside's business in the United States; and

  (ii) file affidavits with the Court confirming that these actions have been taken pursuant to 15 U.S.C. § 1116;

H. Awarding Cambria a judgment against Lakeside for any and all profits derived by Lakeside and all damages sustained by Cambria, by reasons of the acts herein complained of and that the damages be trebled pursuant to 15 U.S.C. § 1117;

I. Awarding Cambria a judgment against Lakeside for Cambria's reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1117(a);

J. Granting such other relief as the Court deems just and reasonable.

## DEMAND FOR JURY TRIAL

Cambria hereby demands a jury trial on all issues.

Respectfully submitted,

Dated: June 5, 2020

s/Gregory A. Lewis
Gregory A. Lewis (P75796)
glewis@priceheneveld.com
Matthew J. Gipson (P60169)
mgipson@priceheneveld.com
PRICE HENEVELD LLP
695 Kenmoor, S.E. | P.O. Box 2567
Grand Rapids, MI 49501 | 616.949.9610

Of counsel:

John C. Adkisson
FISH & RICHARDSON, P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: 612.335.5070
Facsimile: 612.288.9696
*Attorneys for Cambria Company LLC*