## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CAMBRIA COMPANY LLC,

      Plaintiff,

    v.

LAKESIDE SURFACES, INC.,

      Defendant.

Civil No. 20-cv-00508-PLM-PJG

Honorable Paul L. Maloney

---

GREGORY A. LEWIS, P75796
MATTHEW J. GIPSON, P60169
PRICE HENEVELD, LLP
Attorneys for Plaintiff
695 Kenmoor, S.E.
Grand Rapids, MI 49501
(616) 949-9610
glewis@priceheneveld.com

ROBERT D. GOLDSTEIN, P38298
JOHN W. WHITMAN, P37932
GARAN LUCOW MILLER, P.C.
Attorneys for Defendant
10801 S. Saginaw Street, Bldg. D
Grand Blanc, MI 48439
(810) 695-3700
rgoldstein@garanlucow.com
jwhitman@garanlucow.com

---

### DEFENDANT, LAKESIDE SURFACES, INC.'S ANSWER
### TO PLAINTIFF CAMBRIA COMPANY, LLC'S COMPLAINT

### NOTICE OF AFFIRMATIVE DEFENSES AND RESERVATION OF
### RIGHT TO FILE ADDITIONAL AND/OR SPECIAL AFFIRMATIVE DEFENSES

### RELIANCE UPON JURY DEMAND

### CERTIFICATE OF SERVICE

## DEFENDANT, LAKESIDE SURFACES, INC.'S ANSWER
## TO PLAINTIFF CAMBRIA COMPANY, LLC'S COMPLAINT

Defendant, Lakeside Surfaces, Inc., (Lakeside) in answer to the Complaint for Patent Infringement, Trademark Infringement and Unfair Competition, filed by plaintiff Cambria Company, LLC, ("Cambria") responds as follows:

### PARTIES

1.      Plaintiff Cambria is a Minnesota limited liability company with its principal place of business at 805 Enterprise Drive East, Suite H, Belle Plaine, MN 56011.

**ANSWER:      Answering paragraph 1, Lakeside lacks knowledge or information sufficient to form a belief about the truth of the allegation.**

2.      Upon information and belief, Defendant Lakeside is a Michigan corporation with its principal place of business at 2265 Black Creek Rd, Muskegon, MI 49444. Lakeside also has locations at 3792 29th Street SE, Kentwood, MI 49512; 2807 Cass Road Suite B1, Traverse City, MI 49684; 12816 Emerson Dr, Brighton, MI 48116; and 6274 Norton Center Dr, Norton Shores, MI 49441.

**ANSWER:      Answering paragraph 2, Lakeside admits.**

### JURISDICTION AND VENUE

3.      Cambria's claims arise under the patent and trademark laws of the United States, 35 U.S.C. §§ 1 *et seq*, and 15 U.S.C. §§ 1051 *et seq*. Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:      Answering paragraph 3, Lakeside admits that this Court has subject matter jurisdiction but as to the balance of the allegations, defendant denies the remaining allegations contained in paragraph 3.**

1

4.      This Court has personal jurisdiction over Lakeside. Upon information and belief, Lakeside has a physical place of business in this judicial district located at 3792 29th Street SE, Kentwood, MI 49512. Lakeside has also committed the acts complained of herein in the Western District of Michigan, including, but not limited to (a) making, using, selling, or offering for sale the infringing products accused herein; and (b) directing its infringing products at residents in the State of Michigan and in this judicial district. Lakeside distributes its infringing products within this judicial district. Finally, Cambria's claims arise out of or relate to Lakeside's activities in Michigan.

**ANSWER:      Answering paragraph 4, Lakeside admits that this Court has personal jurisdiction over Lakeside. Defendant Lakeside denies the remaining allegations contained in paragraph 4.**

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), 1391 and 1400(b) because Lakeside has committed acts of infringement in this judicial district where the infringing products can be found. Lakeside has a regular and established physical place of business in this judicial district located at 3792 29th Street SE, Kentwood, MI 49512. This Court also has supplemental jurisdiction over the Michigan statutory claims for unfair competition under 28 U.S.C. §§ 1338(b) and 1367(a) because these claims are so related to the claims under which the Court has original jurisdiction that it forms the part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:      Answering paragraph 5, Lakeside admits venue is proper in this judicial district. Lakeside denies the remaining allegations in paragraph 5.**

## FACTUAL BACKGROUND

6.      Plaintiff Cambria is an industry leader in the design and manufacture of natural quartz surface products. Cambria's natural quartz surface products have a variety of uses in homes

2

and businesses, including, but not limited to, countertops, floor tiles, vanities, fireplace surrounds, wet bars, and showers.

**ANSWER:**      **Answering paragraph 6, Lakeside lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 6.**

<u>**Cambria's Patents**</u>

7.      To protect its designs, Cambria sought and received intellectual property protections in its designs, including, but not limited to, United States Design Patent D780,332 (the "D'332 patent").

**ANSWER:**      **Answering paragraph 7, Lakeside lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 7.**

8.      The D'332 patent issued on February 28, 2017. Cambria is the owner of the D'332 patent by assignment. The D'332 patent is valid, enforceable, and duly issued in compliance with Title 35 of the United States Code. A true and correct copy of Cambria's D'332 patent is attached as **Exhibit A**.

**ANSWER:**      **Answering paragraph 8, Lakeside admits that D'332 patent was issued on February 28, 2017. Lakeside denies the remaining allegations contained in paragraph 8.**

9.      The D'332 patent is entitled "An Ornamental Design for a Slab." The sole figure from the D'332 patent is shown below:



ANSWER:     **Answering paragraph 9, Lakeside lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 9.**

10.     Cambria's Brittanicca™ quartz surface product from its Marble Collection™ features the design of the D'332 patent.

ANSWER:     **Answering paragraph 10, Lakeside lacks knowledge or information sufficient to form a belief about the truth of the allegation and thus denies the same.**

11.     Cambria's Brittanicca product has been marked in accordance with 35 U.S.C. § 287. Cambria marks the D'332 patent number on slab labels and sample labels.

ANSWER:     **Answering paragraph 11, Lakeside lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 11.**

<u>**Cambria's Trademarks**</u>

12.     Cambria first publicly displayed the trademark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" as signage over the doors of its manufacturing and fabrication facilities in LeSueur, MN as early as July 2014. Cambria has displayed its trademark continuously in that location since that time.

ANSWER:     **Answering paragraph 12, Lakeside lacks knowledge or information sufficient to form a belief about the truth of the allegation in paragraph 12.**

4

13.     Beginning in 2014 and continuously since that time, Cambria has similarly displayed its trademark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" as signage (1) over the doors of its processing plant in Le Sueur, MN; (2) over the doors of its corporate headquarters and fabrication shop in in Belle Plaine, MN; (3) over the doors of its fabrication shop in Indianapolis, IN; and (4) over the doors of its fabrication shop in Cleveland, OH. Cambria has displayed its trademark continuously in those locations since that time.

**ANSWER:     Answering paragraph 13, Lakeside lacks knowledge or information sufficient to form a belief about the truth of the allegation in paragraph 13.**

## Lakeside's Activities

14.     Defendant Lakeside purchases surface products from manufacturers such as Cambria, fabricates the product in accordance with the specifications provided by its customers, and then sells the fabricated product to retailers, builders, designers and commercial firms as well as local kitchen and bath stores. In fact, Lakeside purports to be "the largest fabricator and installer of countertop materials in the Midwest." About Us, Lakeside Surfaces, Inc. (last visited 6.1.2020), available at https://lakesidesurfaces.com/about/.

**ANSWER:     Answering paragraph 14, Lakeside admits that Lakeside is in the business of fabricating surface products from various manufacturers in accordance with its customers. Lakeside denies the remaining allegations contained in paragraph 14.**

15.     For years, Lakeside distributed Cambria's products in Michigan. As part of that relationship, Lakeside's employees would routinely visit Cambria's facilities and corporate headquarters in Minnesota. As just one example, on February 20, 2015, Lakeside's CFO Daniel Foy visited Cambria's processing plant in Le Sueur, MN for the purpose of touring Cambria's

manufacturing facility. Prior to participating in the tour of the Cambria facility, Mr. Foy executed Cambria's Visitor Confidentiality Agreement.

**ANSWER:   Answering paragraph 15, Lakeside admits that Lakeside distributed Cambria's products in Michigan and also admits that Lakeside visited Cambria's facilities and corporate headquarters in Minnesota. Lakeside denies the remaining allegations contained in paragraph 15.**

16.   Upon information and belief, Mr. Foy viewed Cambria's trademark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" either before, during or after his tour of Cambria's facilities on February 20, 2015.

**ANSWER:   Answering paragraph 16, Lakeside lacks knowledge or information sufficient to form a belief about the allegation.**

17.   On August 20, 2015, Lakeside applied for trademark protection for the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD." As part of its trademark application, Lakeside represented to the United States Patent and Trademark Office that the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD" was first used at least as early as August 1, 2015 and was first used in commerce at least as early as August 15, 2015.

**ANSWER:   Answering paragraph 17, Lakeside admits this allegation.**

18.   As part of its trademark application, Lakeside filed a declaration under oath stating it was the owner of the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD." In that same declaration, Lakeside represented to the United States Patent and Trademark Office that "to the best of [its] knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce . . . " Those statements were false.

**ANSWER:**     **Answering paragraph 18, Lakeside admits that it filed a declaration stating it was owner of the mark. As to the remaining allegations in paragraph 18, defendant Lakeside denies.**

19.     To support its application, Lakeside submitted the following photo of a Lakeside van using the phrase "The Finest Countertop Makers in the World" positioned above a Cambria logo:



**ANSWER:**     **Answering paragraph 19, Lakeside lacks knowledge or information sufficient to form a belief about the truth of the allegation in paragraph 19.**

20.     Nowhere in Lakeside's trademark application or in subsequent prosecution did Lakeside reference the fact that Cambria had been using the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" since at least July 2014, including during the time when Lakeside's CFO personally toured Cambria's facilities where Cambria's mark was being used.

**ANSWER:**     **Answering paragraph 20, Lakeside denies the same.**

21.     The United States Patent and Trademark Office issued United States Trademark Number 4,957,640 on May 10, 2016 for the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD." The mark was awarded to Lakeside Surfaces, Inc.

7

**ANSWER:**    **Answering paragraph 21, Lakeside admits the same.**

22.    Since the time of its trademark application, Lakeside has used the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" in commerce to advertise its products and services. As one example, Lakeside posts "Our motivation" on its Instagram account "to be the *Finest Countertop Makers in the World*™ Thank you for being a valued customer!" See https://www.instagram.com/p/BUKFH7VjwP_/?fbclid=IwAR1joxIm86o94ZUKwp4e7lQaMe3f h0E1srWtyYgyo8_ehQb--_gGqQoFAcw Lakeside employees have also used the mark in press interviews.    See    https://www.stoneworld.com/articles/89586-lakeside-surfaces-focusing-on-quality-and-customer-service

**ANSWER:**    **Answering paragraph 22, Lakeside admits.**

23.    Cambria's business relationship with Lakeside ended in 2018 after Lakeside began selling products from Cambria's competitors including Aurea Stone, 4Elements, MetroQuartz, and LG Viatera. The end of that relationship resulted in litigation filed by Lakeside against Cambria in this district. *See* Case No. 1:18-cv-00110-JTN-ESC.

**ANSWER:**    **Answering paragraph 23, Lakeside admits.**

24.    Upon information and belief, Lakeside recently began to offer for sale and sell "Lakeside Exclusive Designs – Limited Edition" "Calacatta Oceania" product, which Lakeside refers to as "Best Seller." Lakeside offers for sale the Calacatta Oceania product through at least the following website: https://www.lakesidesurfaces.com/product/calacatta-oceania/.

**ANSWER:**    **Answering paragraph 24, Lakeside admits.**

25.    Lakeside's Calacatta Oceania product features the claimed design of the D'332 patent.

**ANSWER:**    **Answering paragraph 25, Lakeside denies this allegation.**

26.     Cambria has not authorized Lakeside to copy, reproduce, manufacture, duplicate, disseminate, distribute, sell, offer for sale, or display quartz surface products with the design from the D'332 patent.

**ANSWER:     Answering paragraph 26, Lakeside denies this allegation.**

**COUNT 1: LAKESIDE'S INFRINGEMENT OF THE D'332 PATENT**

27.     Cambria incorporates by reference, as if fully set forth herein, Paragraphs 1-26 of this Complaint.

**ANSWER:     Answering paragraph 27, Lakeside incorporates by reference its previous responses as though fully set forth herein.**

28.     On February 28, 2017, the United States Patent and Trademark Office duly and legally issued the D'332 patent.

**ANSWER:     Answering paragraph 28, Lakeside lacks knowledge or information sufficient to form a belief about the truth of the allegation leaving plaintiff Cambria to its proofs.**

29.     The D'332 patent is directed to an "an ornamental design for a slab" as shown in the sole figure of the D'332 patent.

**ANSWER:     Answering paragraph 29, Lakeside admits the same.**

30.     Cambria is the owner of the D'332 patent by assignment.

**ANSWER:     Answering paragraph 30, Lakeside lacks knowledge or information sufficient to form a belief about the truth of the allegation leaving plaintiff Cambria to its proofs.**

31.     Lakeside has made, used, sold, and/or offered for sale within the United States and/or imported into the United States, one or more accused products, including, but not limited to, the Calacatta Oceania product. The design of Lakeside's infringing product, in the eye of the

ordinary observer who is familiar with the prior art in the field, appears substantially similar to the ornamental design of the D'332 patent.

**ANSWER:** **Answering paragraph 31, Lakeside denies the same.**

32. Lakeside has damaged and will continue to damage Cambria in an amount to be determined at trial.

**ANSWER:** **Answering paragraph 32, Lakeside denies this allegation.**

33. Lakeside has irreparably injured Cambria and such injury will continue unless Lakeside is enjoined by this Court.

**ANSWER:** **Answering paragraph 33, Lakeside denies this allegation.**

<u>**COUNT 2: LAKESIDE'S INFRINGEMENT OF CAMBRIA'S MARK "THE FINEST COUNTERTOP MAKERS IN THE WORLD"**</u>

34. Cambria incorporates herein and realleges Paragraphs 1-33 above.

**ANSWER:** **Answering paragraph 34, Lakeside incorporates by reference its previous responses as though fully set forth herein.**

35. As a result of Cambria's continuous use and promotion of the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," consumers associate and recognize the mark as representing a single source or sponsor of services, and therefore the trademark is protectable at common law.

**ANSWER:** **Answering paragraph 35, Lakeside denies this allegation.**

36. Cambria owns and enjoys trademark rights in the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," which rights are superior to any rights that Lakeside may claim in the mark with respect to Lakeside's services. Cambria's mark is strong and inherently distinctive.

**ANSWER:** **Answering paragraph 36, Lakeside denies this allegation.**

10

37.     Lakeside's registration, adoption, distribution, marketing, promotion, offering for sale and sale of services that use the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," which is confusingly similar to Cambria's mark, constitutes an infringement of Cambria's mark in violation of common law.

**ANSWER:     Answering paragraph 37, Lakeside denies this allegation.**

38.     As a result of Lakeside's unauthorized use of the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," the public is likely to believe that Lakeside's services have been created, approved by, or are affiliated with Cambria's. Consequently, Cambria's ability to sell its goods and services is limited due to Lakeside's improper use of the mark.

**ANSWER:     Answering paragraph 38, Lakeside denies this allegation.**

39.     As a result of Lakeside's wrongful conduct, Cambria has suffered and will continue to suffer damages, as well as the loss of control over the goodwill and reputation established by its mark.

**ANSWER:     Answering paragraph 39, Lakeside denies this allegation.**

40.     As a result of Lakeside's wrongful conduct, Cambria has been damaged in an amount not presently ascertained, and such damages will continue and increase unless and until Lakeside is enjoined from continuing its unlawful conduct.

**ANSWER:     Answering paragraph 40, Lakeside denies this allegation.**

41.     Unless Lakeside's unlawful conduct is enjoined, Cambria has no adequate remedy at law for Lakeside's wrongful conduct, because among other things, (a) Cambria's mark is unique and valuable property which has no readily determinable market value; (b) Lakeside's infringement constitutes harm to Cambria cannot be made whole by a monetary award; (c) if

11

Lakeside's wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken or deceived as to the source, origin or authenticity of the services; and (d) Lakeside's wrongful conduct, and the resulting damage to Cambria, are continuing and ongoing, since Lakeside is continuing to use the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD."

**ANSWER:**   **Answering paragraph 41, Lakeside denies this allegation.**

## COUNT 3: FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

42.     Cambria incorporates herein and realleges Paragraphs 1-41 above.

**ANSWER:**   **Answering paragraph 42, Lakeside incorporates by reference its previous responses as though fully set forth herein.**

43.     Cambria is the common law owner of all rights and title to, and has valid and protectable prior rights to the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD."

**ANSWER:**   **Answering paragraph 43, Lakeside denies this allegation.**

44.     Lakeside's actions described above and specifically, without limitation, Lakeside's use in U.S. commerce of the confusingly similar mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" in the distribution, marketing promotion, offering for sale and sale of its services constitutes unfair competition, false designation of origin and false description or representations. Such conduct wrongfully trades on Cambria's goodwill, passes off Lakeside's services in commerce as those of Cambria and limits Cambria's ability to gain revenue through the sale of its own services.

**ANSWER:**   **Answering paragraph 44, Lakeside denies this allegation.**

45.     As a result of Lakeside's current unlawful use in commerce of the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," which is confusingly similar to the

Cambria mark, consumers are likely to be misled, deceived and confused as to the origin, sponsorship or affiliation of Lakeside's services.

**ANSWER:     Answering paragraph 45, Lakeside denies this allegation.**

46.     Lakeside's unauthorized and tortious conduct has deprived and will continue to deprive Cambria of the ability to control consumer perception of its services, placing the valuable reputation and goodwill of Cambria in the hands of Lakeside.

**ANSWER:     Answering paragraph 46, Lakeside denies this allegation.**

47.     By engaging in the aforesaid acts, Lakeside is unfairly competing with and damaging Cambria.

**ANSWER:     Answering paragraph 47, Lakeside denies this allegation.**

48.     Lakeside's conduct in adopting and using the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" is likely to cause confusion, mistake or deception as to the affiliation, connection and associates of Lakeside and its services with Cambria and its services, and as to the sponsorship, origin or approval of Lakeside and its services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER:     Answering paragraph 48, Lakeside denies this allegation.**

### COUNT 4: UNFAIR COMPETITION UNDER MICHIGAN COMMON LAW, M.C.L. § 445.903 *et seq*.

49.     Cambria reincorporates herein and realleges Paragraphs 1-48 above.

**ANSWER:     Answering paragraph 49, Lakeside incorporates by reference its previous responses as though fully set forth herein.**

50.     Through its continued use of the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," Lakeside has engaged in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce in violation of M.C.L. § 445.903 *et seq*.

**ANSWER:** **Answering paragraph 50, denies this allegation.**

51.     Specifically, as a result of the aforesaid acts, Lakeside has (1) caused a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services as prohibited by M.C.L. § 445.903(1)(a); (2) represented that its goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have as prohibited by M.C.L. § 445.903(1)(c); and (3) represented that its goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another as prohibited by M.C.L. § 445.903(1)(e).

**ANSWER:** **Answering paragraph 51, Lakeside denies this allegation.**

52.     Cambria has been damaged by Lakeside's aforementioned actions in an amount to be determined at trial.

**ANSWER:** **Answering paragraph 52, Lakeside denies this allegation.**

**WHEREFORE,** Defendant Lakeside Surfaces, Inc., denies paragraphs A through J and respectfully requests that this Court dismiss Cambria's complaint with prejudice together with any and such further relief as the Court deems necessary and just.

GARAN LUCOW MILLER, P.C.

DATED: September 16, 2020          **/s/ Robert D. Goldstein**
                                   ROBERT D. GOLDSTEIN P-38298
                                   JOHN W. WHITMAN, P37932
                                   Attorneys for Defendant Lakeside Surfaces
                                   10801 S. Saginaw Street, Bldg. D
                                   Grand Blanc, Michigan 48439
                                   (810) 695-3700
                                   rgoldstein@garanlucow.com
                                   jwhitman@garanlucow.com

## RELIANCE UPON DEMAND FOR JURY TRIAL

Lakeside Surfaces, Inc., hereby relies on the jury demand filed by Cambria and likewise demands a trial by jury.

GARAN LUCOW MILLER, P.C.

DATED: September 16, 2020
/s/ Robert D. Goldstein
ROBERT D. GOLDSTEIN P-38298
JOHN W. WHITMAN, P37932
Attorneys for Defendant Lakeside Surfaces
10801 S. Saginaw Street, Bldg. D
Grand Blanc, Michigan 48439
(810) 695-3700
rgoldstein@garanlucow.com

## NOTICE OF AFFIRMATIVE DEFENSES AND RESERVATION OF RIGHT TO FILE ADDITIONAL AND/OR SPECIAL AFFIRMATIVE DEFENSES

Defendant, Lakeside Surfaces, Inc., by and through its attorneys, Garan Lucow Miller, P.C., and for its affirmative defenses states as follows:

1.     Each purported claim for relief in the complaint is barred for failure to state a claim upon which relief can be granted, FRCP 12(b)(6).

2.     The purported claim for relief in the complaint for trademark infringement is barred as plaintiff does not hold a valid and/or enforceable rights in the asserted mark, the mark being the registered trademark of Lakeside Surfaces, Inc.

3.     Any alleged injury or damage suffered by plaintiff would be adequately compensated by damages and thus plaintiff has an adequate remedy at law and is not entitled to any equitable relief.

4.     Each purported claim for relief in the complaint is barred because of plaintiff's failure to mitigate damages if such damages even exist.

5.     There has been no infringement of the claimed design patent, as Defendant was authorized to use the claimed design patent.

6.     Plaintiff's design patent is invalid based, to and including that the design patent was not novel and not subject of design patentability.

7.     Plaintiff's design patent claim is unenforceable because of inequitable conduct on the part of Cambria in obtaining the design patent, to and including duties of disclosure or candor to the USPTO.

8.     Defendant Lakeside Surfaces at all times possessed the license to use the claimed design patented material through its purchase of the product from Cambria.

16

9.     Cambria's claims are barred by laches.

10.    Plaintiff's claims are unenforceable by the defense of equitable estoppel.

11.    Plaintiff's claim design patent is barred due to invalidity based on prior Art. 35 USC § 102.

12.    Lakeside is not a manufacturer of the product and not an infringer.

13.    At all times Lakeside had a license to use the material that is the subject of the complaint.

14.    Plaintiff's claims are barred by the applicable statute of limitations.

15.    Defendant, Lakeside Surfaces, Inc., reserves the right to add and/or amend these affirmative defenses as discovery progresses.

GARAN LUCOW MILLER, P.C.

DATED: September 16, 2020

*/s/ Robert D. Goldstein*
ROBERT D. GOLDSTEIN P-38298
JOHN W. WHITMAN, P37932
Attorneys for Defendant Lakeside Surfaces
10801 S. Saginaw Street, Bldg. D
Grand Blanc, Michigan 48439
(810) 695-3700
rgoldstein@garanlucow.com
jwhitman@garanlucow.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 16, 2020, I electronically filed Defendant Lakeside Surfaces, Inc.'s Answer to Complaint, Notice of Affirmative Defenses and Reservation of Right to File Additional and/or Special Affirmative Defenses, Reliance Upon Jury Demand and Certificate of Service, with the Clerk of the Court using the CM/ECF filing system which will send notification of such filing to the following participants:

Gregory A. Lewis     glewis@pricheneveld.com

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-File and Serve participants:

Not Applicable

DATED: September 16, 2020          /s/ Lisa J. Boulis
                                  LISA J. BOULIS
                                  GARAN LUCOW MILLER, P.C.
                                  10801 S. Saginaw Street, Bldg. D
                                  Grand Blanc, Michigan 48439
                                  810-695-3700
                                  lboulis@garanlucow.com