# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| CAMBRIA COMPANY LLC<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LAKESIDE SURFACES, INC.,<br><br>　　　　Defendant. | Case No. 1:20-cv-508 (JMB/PJG)<br><br>Hon. Jane M. Beckering |

**PLAINTIFF CAMBRIA COMPANY LLC'S BRIEF IN SUPPORT OF CAMBRIA'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT**

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. NATURE AND STAGE OF THE PROCEEDINGS ............................................1

III. LEGAL STANDARDS ..........................................................................................1

IV. STATEMENT OF FACTS ....................................................................................2

V. CAMBRIA'S PROPOSED AMENDMENTS SHOULD BE
PERMITTED .........................................................................................................6

    A. Good Cause Exists for Cambria's Proposed Amendments........................6

    B. Cambria's Amendments Will Not Prejudice Lakeside .............................7

    C. There Has Been No Undue Delay, Bad Faith, or Dilatory
Motive .........................................................................................................8

    D. Cambria's Proposed Amendments are Not Futile ....................................9

    E. Cambria's Proposed Amendments Promote Judicial Efficiency .............10

VI. CONCLUSION.....................................................................................................10

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andretti v. Borla Performance Indus., Inc.*,
   426 F.3d 824 (6th Cir. 2005) ...................................................................................................6

*Benzon v. Morgan Stanley Distrib., Inc.*,
   420 F.3d 589 (6th Cir.2005) ....................................................................................................2

*Brimmeier v. DeMaria Building Co.*,
   2021 WL 3145699 (July 26, 2021) ..........................................................................................9

*Doe v. Michigan State University*,
   989 F.3d 418 (6th Cir. 2021) ...................................................................................................9

*GFR, Ltd. v. Farner*,
   2019 WL 1198538 (W.D. Mich. Mar. 14, 2019) ................................................................9, 10

*Hardin v. Int'l Broth. of Elec. Workers Local 665*,
   2013 WL 6158696 (W.D. Mich. Nov. 25, 2013) .................................................................2, 9

*Haworth, Inc. v. Tate Access Floors, Inc.*,
   2013 WL 12290266 (W.D. Mich. Sept. 5, 2013) ...................................................................10

*Jaguar Land Rover Ltd. v. Bombardier Recreational Prods., Inc.*,
   2017 WL 2472851 (E.D. Mich. June 8, 2017) ........................................................................9

*Kacynski v. Dewey*,
   2021 WL 5334369 (W.D. Mich. Apr. 5, 2021) ...................................................................1, 6

*Kellogg Co. v. FPC Flexible Packaging Corp.*,
   2012 WL 769476 (W.D. Mich. Mar. 7, 2012) .........................................................................6

*Langley v. Credit Suisse First Boston Corp.*,
   89 Fed. Appx. 938 (6th Cir. 2004) ...........................................................................................8

*Leary v. Daeschner*,
   349 F.3d 888 (6th Cir. 2003) ................................................................................................1, 2

*Morse v. McWhorter*,
   290 F.3d 795 (6th Cir. 2002) ...................................................................................................9

*Mote v. City of Chelsea*,
   252 F.Supp.3d 642 (E.D. Mich. 2017) .....................................................................................7

*Police and Fire Retirement System of the City of Detroit v. Watkins*,
   2008 WL 11355562 (E.D. Mich. Dec. 18, 2008) ................................................................10

*Security Ins. Co. of Hartford v. Kevin Tucker & Assoc., Inc.*,
   64 F.3d 1001 (6th Cir. 1995) .................................................................................................7

*Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*,
   987 F.2d 376 (6th Cir.1993) ..................................................................................................9

*Troxel Mfg. Co. v. Schwinn Bicycle Co.*,
   489 F.2d 968 (6th Cir. 1973) .................................................................................................7

*Victor v. Reynolds*,
   2022 WL 193599 (E.D. Mich. Jan. 21, 2022) .....................................................................8, 9

**Other Authorities**

Fed. R. Civ. P. 9 ..........................................................................................................................9, 10

Fed. R. Civ. P. 12 ...............................................................................................................................2

Fed. R. Civ. P. 15 ...................................................................................................................1, 2, 6, 7

Fed. R. Civ. P. 16 ......................................................................................................................1, 6, 7

## I. INTRODUCTION

After months of being denied relevant discovery, Plaintiff Cambria Company LLC ("Cambria") has now obtained sufficient information from Defendant Lakeside Surfaces, Inc. ("Lakeside") to support its allegations of fraud. Cambria thus seeks to amend its pleadings to add one count of fraud regarding Lakeside's procurement of its trademark and petition for its cancellation, while simultaneously seeking to withdraw its claims of trademark infringement and unfair trade practices arising from the substantially same set of facts. In fact, Cambria's proposed amendments will substantially narrow the issues in dispute in this case. Amendment is proper as Cambria has good cause to amend pursuant to Rule 16, and because none of the prohibitions enumerated under Rule 15 counsel against Rule 15's instructions to "freely give leave" to amend.

## II. NATURE AND STAGE OF THE PROCEEDINGS

Cambria filed its initial complaint on June 5, 2020. (Dkt. 1.) An October 2020 Case Management Order scheduled the deadline to amend the pleadings for January 15, 2021, and the close of fact discovery for August 27, 2021. (Dkt. 15 at 1-2.) However, protracted settlement negotiations necessitated an extension of the fact discovery period until March 11, 2022. (*See* Dkt. 47.) The deadline for the disclosure of expert reports is April 15, 2022, and trial is scheduled to begin December 12, 2022. (*See* Dkt. 49.)

## III. LEGAL STANDARDS

In order to amend a pleading after a scheduling order deadline for the amendment of pleadings elapses, a party must first show "good cause" pursuant to Federal Rule of Civil Procedure 16(b). *See* Fed. R. Civ. P. 16(b); *see also Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). To satisfy the "good cause" requirement, a plaintiff must show that "in spite of her diligence, she could not have met the original deadline for amending her complaint." *See Kacynski v. Dewey*, 2021 WL 5334369, at *2 (W.D. Mich. Apr. 5, 2021). If the court determines Rule 16's

1

requirement of "good cause" is satisfied, it may then consider whether to allow leave to amend under Federal Rule of Civil Procedure 15. *See Leary*, 349 F.3d at 909.

Pursuant to Rule 15(a), a party may have leave to amend a complaint as a matter of course within 21 days of filing the complaint, or 21 days after service of a responsive pleading is served, if one is required, or 21 days of service of motions under Rule 12(b), (e), or (f). *See* Fed. R. Civ. P. 15(a)(1). After this period expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *See* Fed. R. Civ. P. 15(a)(2). The Federal Rules instruct that "[t]he court should freely give leave when justice so requires." *Id*. "The Court may deny such leave, however, where there exists 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *See Hardin v. Int'l Broth. of Elec. Workers Local 665,* 2013 WL 6158696, at *2-3 (W.D. Mich. Nov. 25, 2013) (citing *Benzon v. Morgan Stanley Distrib., Inc.,* 420 F.3d 589, 613 (6th Cir.2005)).

### IV. STATEMENT OF FACTS

On June 18, 2021, Lakeside produced documents in response to Cambria's discovery requests. Included in this document production were a handful of emails, which appeared to demonstrate that Lakeside procured its trademark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" (the "Mark") by fraud, though Lakeside omitted key attachments to these emails that would confirm Lakeside's duplicity. Specifically, Lakeside's documents demonstrated that, on September 10, 2014, Lakeside's CEO Matt Neiger visited Cambria's processing plant in Le Sueur, MN. (*See* Ex. C at 000000321.) The day following his visit, Mr. Neiger emailed Mr. Ray Schelhas, Lakeside's Director of Marketing, directing him to develop signage for display above the doors at Lakeside's facilities, stating "[t]his is what is above all of the doors at Cambria." (Ex.

2

D at 00000356.)  Mr. Neiger's email included an attachment—presumably of the signage at Cambria's facility bearing the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD" that Mr. Neiger photographed during his Cambria facility tour.  However, Lakeside did not produce any associated attachments to Mr. Neiger's email.

Later on September 11, 2014, Mr. Schelhas emailed Lakeside's graphic designer Annie Balavitch directing her to "come up with [Lakeside's] own version for this" and specifically instructed that she "also include one that is exactly like Cambria's."  (Ex. E at 00000352.)  The context of Mr. Schelhas' email indicates that he included an attachment, but again Lakeside did not produce any associated attachment.  On September 17, 2014, Ms. Balavitch provided to Mr. Schelhas variations of the requested signage—again presumably in an attachment.  (*Id*. at 00000351.)  However, any attachments showing Ms. Balavitch's proposed designs were also omitted from Lakeside's document production.  Mr. Schelhas then provided the proposed designs to Mr. Neiger on September 17, explaining "[w]e brainstormed some of our own phrases, and then the 4th option is exactly like Cambria's."  (Ex. D at 00000355.)  The attachments to Mr. Schelhas' September 17 email are also absent from Lakeside's document production.

In August 2015, Lakeside filed to register the Mark with the United States Patent and Trademark Office ("USPTO").  However, Lakeside did not disclose in its application to the USPTO that it copied this Mark from Cambria, nor that it first saw and photographed the Mark while it was in use at Cambria's facilities.  Lakeside instead filed a declaration under oath stating it was the owner of the Mark and represented to the USPTO that "to the best of [its] knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce . . . ."  (Ex. F (Trademark Application) at 8.)  These statements were false.

3

On September 17, 2021, Cambria requested the email attachments absent from Lakeside's production but Lakeside did not provide them. (Ex. G (Cambria 9/17/2021 Ltr. to Lakeside).) The parties soon renewed settlement discussions, and following the termination of these discussions and subsequent preparation for fact depositions, Cambria again repeatedly requested the missing attachments. (Ex. H (2/17/2022 & 2/20/2022 Ems. to Goldstein); Ex. I (2/22/2022 & 2/24/2022 Ems. to Goldstein).) Lakeside still did not provide them.

Cambria also sought to understand the nature and content of the missing attachments from Lakeside's witnesses at deposition but repeated postponements frustrated these efforts as well. For example, Cambria originally sought to depose Lakeside's witnesses around November 2021, but had to postpone Mr. Neiger's deposition due to illness. After settlement discussions terminated, Lakeside confirmed Mr. Schelhas' deposition for February 23 and Mr. Neiger's deposition for February 25. (Ex. J (2/4/2022 Em. fr. Goldstein).) However, Mr. Schelhas fell ill and his deposition was postponed. (Ex. K (2/21/2022 Em. fr. Goldstein).) Further, given Lakeside's continued failure to provide responses to Cambria's second set of written discovery—served five months prior on September 17, 2021 (*see* Dkt. 38)—and failure to provide the missing attachments repeatedly sought from Lakeside, Cambria was forced on February 22 to postpone Mr. Neiger's deposition. (Ex. I (2/22/2022 Em. to Goldstein).)

On February 25, 2022, the parties submitted a joint stipulation to compel Lakeside to respond to Cambria's second set of discovery requests and produce the attachments associated with twenty-three Lakeside documents. (Dkt. 58.) In response to this order, on March 3, Lakeside addressed only seven of these twenty-three documents, and did not include the attachments to Mr. Neiger's, Mr. Schelhas', or Ms. Balavitch's emails from September 2014. For the remainder of these unaddressed attachments, Lakeside said only "if there was an attachment

4

to the referenced documents identified in paragraph 1 of the court's order, it would have been supplied with those particular documents." (Ex. L (March 3 Letter).)

Lakeside's March 3 representations proved incorrect, as Lakeside's witnesses confirmed at their recent depositions. On April 1, Mr. Neiger for the first time confirmed in deposition testimony that he indeed took a photo of the sign above the doors at Cambria's facilities, which he then sent to Mr. Schelhas at Lakeside. Mr. Neiger further confirmed that he explicitly asked Mr. Schelhas to copy Cambria's language, despite the fact that Lakeside's graphic designer provided three different options to Mr. Neiger that did not include Cambria's language. (Ex. M (Neiger Tr.) at 70:2-72:12.) Mr. Schelhas and Mr. Neiger both also confirmed that as of September 2014, Lakeside was aware of Cambria's use of the Mark at its facilities. (Ex. M (Neiger Tr.) at 103:24-108:23; Ex. N (Schelhas Tr.) at 155:13-18.) Mr. Neiger also confirmed that Lakeside did not inform the USPTO at any point about Cambria's prior usage of the Mark. (*Id*. at 109:1-110:9.)

Cambria first approached Lakeside regarding its request for leave to amend before Mr. Neiger and Mr. Schelhas' depositions. Lakeside originally represented that it would not oppose. (*See* Ex. O.) However, just three days later, Lakeside reversed course, indicating that it now intended to oppose any request for leave. (*See id*.) With depositions of Lakeside's witnesses imminent, Cambria elected to explore at deposition the nature and existence of the missing email attachments. Now that Lakeside's witnesses have largely confirmed the content of the missing attachments and Lakeside's failure to disclose to the USPTO Cambria's prior usage of the Mark, Cambria seeks leave to amend its pleadings.[1]

---

[1] A redline version of Cambria's proposed amendments is attached as Exhibit A, and a clean version of Cambria's First Amended Complaint is attached as Exhibit B.

5

## V. CAMBRIA'S PROPOSED AMENDMENTS SHOULD BE PERMITTED

Good cause exists for Cambria's proposed amendments and none of the considerations enumerated under Rule 15 are present here to militate against "freely giv[ing] leave" to amend.

### A. Good Cause Exists for Cambria's Proposed Amendments

"The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *See Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005). In this instance, good cause exists because Cambria acted diligently and, "in spite of [this] diligence, [] could not have met the original deadline for amending [its] complaint." *See Kacynski*, 2021 WL 5334369, at *2.

The deadline to amend the pleadings elapsed on January 15, 2021 (Dkt. 15 at 1), yet Lakeside did not produce any documents relevant to Cambria's amendments until six months after this date, on June 18, 2021. As such, it was impossible for Cambria to comply with this deadline. Further, throughout the fall of 2021 and the early months of 2022, Cambria repeatedly sought from Lakeside (to no avail) the missing email attachments that would evidence Lakeside's appropriation of Cambria's mark, including a joint stipulation to compel Lakeside's compliance. (*See* Dkt. 58.) Cambria still has yet to receive any of the requested attachments.

It was not until the week of March 28 that Cambria was able to complete the first depositions of Lakeside's witnesses and confirm in those depositions: (1) the likely nature and content of the missing email attachments, (2) Lakeside's knowledge of Cambria's prior use of the trademark, and (3) Lakeside's failure to disclose Cambria's prior usage to the USPTO. Because Cambria did not have sufficient knowledge of these facts until the completion of recent discovery, good cause exists for Cambria's motion. *See, e.g.*, *Kellogg Co. v. FPC Flexible Packaging Corp.*, 2012 WL 769476, at *2-*3 (W.D. Mich. Mar. 7, 2012) (finding good cause under Rule 16 where plaintiff sought to amend shortly after obtaining necessary discovery).

6

### B. Cambria's Amendments Will Not Prejudice Lakeside

Whether assessed in the context of Rule 15 or Rule 16, the result is the same: Cambria's proposed amendment will not prejudice Lakeside. "An amendment to a complaint prejudices a party where the amendment will require that party to prepare an additional defense strategy and expend additional resources to defend against new claims." *See Mote v. City of Chelsea*, 252 F.Supp.3d 642, 655 (E.D. Mich. 2017) (citing *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973); *see also Security Ins. Co. of Hartford v. Kevin Tucker & Assoc., Inc.*, 64 F.3d 1001, 1010 (6th Cir. 1995) ("Delay alone, however, does not justify the denial of leave to amend [and] [r]ather, the party opposing a motion to amend must make some significant showing of prejudice to prevail."). Here, Cambria's proposed amendments will actually narrow and simplify the issues involved for all parties, including eliminating the need for expert discovery regarding Cambria's trademark infringement claims, reducing the number of counts alleged against Lakeside and thereby conserving the resources of all involved.

Cambria's original complaint alleged trademark infringement and unfair competition under Federal and State laws. (*See* Dkt. 1 (Counts 2-4).) Prevailing on any of these claims would have entitled Cambria to monetary damages. However, Cambria's proposed amendments eliminate original Counts 2-4. In their place, Cambria instead alleges Fraudulent Registration of Lakeside's Trademark No. 4,957,640 (new count 2) and, based on this fraudulent registration, Cambria petitions for cancellation of the trademark registration (new count 3). Because Cambria's new counts only seek cancellation of Lakeside's trademark registration, they obviate the need for discovery regarding financial harm from Lakeside's infringement. These amendments thereby greatly reduce the efforts and expense required of both parties.

Cambria's proposed amendments also do not require additional discovery. First, the amended counts rely on the same factual elements—*i.e.,* Lakeside's appropriation and use of

7

Cambria's mark. Where, as here, the "newly asserted claim would be supported by facts set forth in the original claim," Lakeside cannot demonstrate significant prejudice from amendment. *See Langley v. Credit Suisse First Boston Corp.*, 89 Fed. Appx. 938, 944 (6th Cir. 2004) (affirming a finding of no prejudice where "[t]here was no indication that the Defendants were faced with the prospect of additional discovery because the factual basis of [plaintiff's] complaint remained largely the same."). Second, evidence of Lakeside's fraudulent behavior is already within Lakeside's possession and thus Lakeside need not seek any further discovery from Cambria. Third, even assuming Lakeside needed the opportunity to question Cambria's witnesses about Cambria's fraud allegations, Cambria provided a copy of its proposed amendments in advance of Lakeside's depositions of Cambria's witnesses. (*See* Ex. O.) Lakeside thus cannot claim prejudice now as a result of Cambria's proposed amendments. *See, e.g.*, *Victor v. Reynolds*, 2022 WL 193599, at *1 (E.D. Mich. Jan. 21, 2022) (slip copy) (noting that plaintiff's provision of notice to defendant prior to moving to amend counseled in favor of allowing amendment). Finally, Cambria's proposed amendments do not prejudice Lakeside's ability to comply with the upcoming deadline for the submission of expert testimony, as (1) it is Cambria's damages expert who will offer testimony by this deadline, and (2) Cambria's proposed amendments *eliminate* the need for expert testimony regarding Cambria's trademark claims.

      **C.**      **There Has Been No Undue Delay, Bad Faith, or Dilatory Motive**

Cambria has neither unduly delayed nor exhibited bad faith nor dilatory motive. As described above, Cambria repeatedly sought the documents missing from Lakeside's production and failed to receive them, even after a court-ordered stipulation to compel. Cambria further sought to understand the nature of Lakeside's actions through depositions of Lakeside's witnesses, though these depositions faced repeated postponement. As soon as Cambria could confirm the nature of the missing evidence from discussions with Lakeside's witnesses, Cambria moved to

8

amend. This is not undue delay. *See Brimmeier v. DeMaria Building Co.*, 2021 WL 3145699, at *2 (July 26, 2021) (slip copy) (finding no undue delay where plaintiff moved to amend within one month of the discovery that provided the basis for the amendment); *Victor*, 2022 WL 193599 at *2 (finding no undue delay where plaintiff "filed the motion proximate to learning new facts discovered during depositions"); *see also Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) ("Ordinarily, delay alone, does not just justify denial of leave to amend.").

### D. Cambria's Proposed Amendments Are Not Futile

An amendment is futile "where [the] proposed amendment would not survive a motion to dismiss." *See Hardin*, 2013 WL 6158696, at *2-3 (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.,* 987 F.2d 376, 383 (6th Cir.1993)); *see also Doe v. Michigan State University*, 989 F.3d 418, 427 (6th Cir. 2021). Cambria's proposed amendments would survive a motion to dismiss, even in view of the heightened pleading standard required under Federal Rule of Civil Procedure 9. Rule 9 requires complaints to "state with particularity the circumstances constituting fraud" although "intent, knowledge, and other conditions of a person's mind may be alleged generally." *See* Fed. R. Civ. P. 9(b). As this Court has previously described:

> To allege a claim for fraudulent procurement of a trademark registration, a plaintiff must allege (1) a false or fraudulent representation of a material fact by the applicant in connection with obtaining the trademark; (2) knowledge that the representation was false; (3) the defendant's intent to induce the USPTO to rely on the misrepresentation; (4) reasonable reliance by the USPTO on the misrepresentation, and (5) damages proximately caused by the defendant's misrepresentation.

*See GFR, Ltd. v. Farner*, 2019 WL 1198538 at *3 (W.D. Mich. Mar. 14, 2019) (citing *Jaguar Land Rover Ltd. v. Bombardier Recreational Prods., Inc.*, 2017 WL 2472851, at *2 (E.D. Mich. June 8, 2017)).

Cambria's proposed amendments comply with this heightened standard, identifying (1) Lakeside's false statements to the USPTO regarding first use of the Mark (*i.e.*, omitting

9

disclosure of Cambria's prior use); (2) knowledge that Lakeside knew of Cambria's mark at the time of its application, and thus the falsity of Lakeside's representations; (3) that Lakeside did so in an attempt to induce the USPTO to issue the Mark; (4) that the Mark was indeed issued by the USPTO; and (5) that Cambria has been damaged by the likelihood of confusion resulting from Lakeside's use of the Mark. (*See, e.g.*, Ex. A (Amended Complaint) at ¶¶ 15-28.) This is sufficient for the purposes of Rule 9(b). *See GFR*, 2019 WL 1198538, at *3; *see also Haworth, Inc. v. Tate Access Floors, Inc.*, 2013 WL 12290266 at *4 (W.D. Mich. Sept. 5, 2013) (finding plaintiff's allegations sufficient under Rule 9(b) to "satisfy Rule 9(b)'s primary concern of providing the defendant sufficient notice of the substance of the claim to allow the defendant to prepare a responsive pleading.").

### E. Cambria's Proposed Amendments Promote Judicial Efficiency

The judicial efficiency realized in allowing Cambria to amend its pleadings further counsel in favor of allowing amendment. Should the court deny Cambria's motion, Cambria will be forced to pursue its allegations of fraud either in a new case filed in this district (which could be later consolidated with the present action) or in a proceeding before the USPTO. In either scenario, the parties would be required to engage in the discovery process all over again only to pursue claims that, as described above, arise from the same set of facts. This inefficiency further supports allowing leave to amend. *See Police and Fire Retirement System of the City of Detroit v. Watkins*, 2008 WL 11355562 at *4 (E.D. Mich. Dec. 18, 2008) (finding judicial efficiency favored allowing plaintiff to amend its complaint).

### VI. CONCLUSION

For the foregoing reasons, the Court should grant the instant Motion.

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel for Cambria certifies that this Brief in Support of Cambria's Motion for Leave to Amend its Complaint contains 3217 words as defined by W.D. Mich. LCivR. 7.3(b)(i).  This word count was generated by Microsoft Word 2016.

Dated:  April 13, 2022

s/Gregory A. Lewis
Gregory A. Lewis (P75796)
Matthew J. Gipson (P60169)
PRICE HENEVELD LLP
695 Kenmoor Ave., S.E.
P.O. Box 2567
Grand Rapids, MI 49501
Tel: 616-949-9610
glewis@priceheneveld.com
mgipson@priceheneveld.com

John C. Adkisson
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South 6th Street
Minneapolis, MN 55402
Tel: 612-335-5070
adkisson@fr.com

Grayson P. Sundermeir
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Tel: 302-652-5070
sundermeir@fr.com

*Attorneys for Plaintiff Cambria Company LLC*