# EXHIBIT B

UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF
MICHIGAN SOUTHERN DIVISION

CAMBRIA COMPANY LLC,

        Plaintiff,

vs.

LAKESIDE SURFACES, INC.,

        Defendant.

Case No. 1:20-cv-508 (JMB/PJG)

Hon. Jane B. Beckering

## COMPLAINT FOR PATENT INFRINGEMENT, TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

For its Complaint against Defendant Lakeside Surfaces, Inc. ("Lakeside"), Plaintiff Cambria Company LLC ("Cambria"), states and alleges the following:

## PARTIES

1. Plaintiff Cambria is a Minnesota limited liability company with its principal place of business at 805 Enterprise Drive East, Suite H, Belle Plaine, MN 56011.

2. Upon information and belief, Defendant Lakeside is a Michigan corporation with its principal place of business at 2265 Black Creek Rd, Muskegon, MI 49444. Lakeside also has locations at 3792 29th Street SE, Kentwood, MI 49512; 2807 Cass Road Suite B1, Traverse City, MI 49684; 12816 Emerson Dr, Brighton, MI 48116; and 6274 Norton Center Dr, Norton Shores, MI 49441.

## JURISDICTION AND VENUE

3. Cambria's claims arise under the patent and trademark laws of the United States, 35 U.S.C. §§ 1 *et seq,* and 15 U.S.C. §§ 1051 *et seq*. Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Lakeside. Upon information and belief, Lakeside has a physical place of business in this judicial district located at 3792 29th Street SE, Kentwood, MI 49512. Lakeside has also committed the acts complained of herein in the Western District of Michigan, including, but not limited to (a) making, using, selling, or offering for sale the infringing products accused herein; and (b) directing its infringing products at residents in the State of Michigan and in this judicial district. Lakeside distributes its infringing products within this judicial district. Finally, Cambria's claims arise out of or relate to Lakeside's activities in Michigan.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), 1391 and 1400(b) because Lakeside has committed acts of infringement in this judicial district where the infringing products can be found. Lakeside has a regular and established physical place of business in this judicial district located at 3792 29th Street SE, Kentwood, MI 49512. This Court also has supplemental jurisdiction over the Michigan statutory claims for unfair competition under 28 U.S.C. §§ 1338(b) and 1367(a) because these claims are so related to the claims under which the Court has original jurisdiction that it forms the part of the same case or controversy under Article III of the United States Constitution.

**FACTUAL BACKGROUND**

6. Plaintiff Cambria is an industry leader in the design and manufacture of natural quartz surface products. Cambria's natural quartz surface products have a variety of uses in homes and businesses, including, but not limited to, countertops, floor tiles, vanities, fireplace surrounds, wet bars, and showers.

## Cambria's Patents

7.      To protect its designs, Cambria sought and received intellectual property protections in its designs, including, but not limited to, United States Design Patent D780,332 (the "D'332 patent").

8.      The D'332 patent issued on February 28, 2017. Cambria is the owner of the D'332 patent by assignment. The D'332 patent is valid, enforceable, and duly issued in compliance with Title 35 of the United States Code. A true and correct copy of Cambria's D'332 patent is attached as **Exhibit A**.

9.      The D'332 patent is entitled "An Ornamental Design for a Slab." The sole figure from the D'332 patent is shown below:



10.     Cambria's Brittanicca™ quartz surface product from its Marble Collection™ features the design of the D'332 patent.

11.     Cambria's Brittanicca product has been marked in accordance with 35 U.S.C. § 287. Cambria marks the D'332 patent number on slab labels and sample labels.

## Cambria's Trademarks

12.     Cambria first publicly displayed the trademark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" as signage over the doors of its manufacturing and fabrication

facilities in LeSueur, MN as early as July 2014. Cambria has displayed its trademark continuously in that location since that time.

13. Beginning in 2014 and continuously since that time, Cambria has similarly displayed its trademark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" as signage (1) over the doors of its processing plant in Le Sueur, MN; (2) over the doors of its corporate headquarters and fabrication shop in in Belle Plaine, MN; (3) over the doors of its fabrication shop in Indianapolis, IN; and (4) over the doors of its fabrication shop in Cleveland, OH. Cambria has displayed its trademark continuously in those locations since that time.

### Lakeside's Activities

14. Defendant Lakeside purchases surface products from manufacturers such as Cambria, fabricates the product in accordance with the specifications provided by its customers, and then sells the fabricated product to retailers, builders, designers and commercial firms as well as local kitchen and bath stores. In fact, Lakeside purports to be "the largest fabricator and installer of countertop materials in the Midwest." About Us, Lakeside Surfaces, Inc. (last visited 6.1.2020), available at https://lakesidesurfaces.com/about/.

15. For years, Lakeside distributed Cambria's products in Michigan. As part of that relationship, Lakeside's employees would routinely visit Cambria's facilities and corporate headquarters in Minnesota. As just one example, on information and belief, on September 10, 2014, Lakeside's President Rob Riegler and CEO Matt Neiger visited Cambria's processing plant in Le Sueur, MN for the purpose of touring Cambria's manufacturing facility.

16. Upon information and belief, both Mr. Neiger and Mr. Riegler viewed Cambria's trademark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" in use throughout Cambria's facilities, for example, on signage above the doorways in Cambria's facility either before,

during or after this tour of Cambria's facilities on September 10, 2014. Upon information and belief, Mr. Neiger during his tour took photographs of the signage at Cambria's facilities bearing this mark.

17. The following day, on September 11, 2014, Mr. Neiger emailed Mr. Ray Schelhas, Lakeside's Director of Marketing, stating that he "would like Annie [Balavitch] to design a sign for above all our doors." Lakeside did not ask Cambria for permission to use this phrase. Mr. Neiger attached a file to his request and described "[t]his is what is above all of the doors at Cambria." Mr. Neiger testified in a recent deposition that he attached to his email a photograph, taken by Mr. Neiger during the September 10, 2014 tour of Cambria's facilities, of Cambria's signage bearing the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD."

18. Later on September 11, 2014, Mr. Schelhas, emailed Lakeside's graphic designer Annie Balavitch and requested that Lakeside "come up with [their] own version for this." Upon information and belief, Mr. Schelhas attached the photograph provided by Mr. Neiger and taken during the September 10, 2014 tour of Cambria's facilities. Mr. Schelhas specifically instructed that Ms. Balavitch "also include one that is exactly like Cambria's" and that this is "probably the one they will end up picking[.]" Upon information and belief, Mr. Schelhas' reference to "they" describes Mr. Neiger and Mr. Riegler.

19. On September 17, 2014, Ms. Balavitch provided to Mr. Schelhas three variations of the requested signage. In response, Mr. Schelhas again requested that Ms. Balavitch "do a 4th that is the same wording as Cambria's" adding that he "really hope[d] they don't pick it but that they want to see it." Upon information and belief, Mr. Schelhas' reference to "they" again refers to Mr. Riegler and Mr. Neiger.

5

20. Later on September 17, 2014, Mr. Schelhas sent Mr. Neiger the concept designs for Lakeside's signage, explaining that "[w]e brainstormed some of our own phrases, and then the 4th option is exactly like Cambria's." In sending the design concepts, Mr. Schelhas requested that Mr. Neiger "let [Mr. Schelhas] know what Rob says." Upon information and belief, Mr. Schelhas' reference to "Rob" is in reference to Rob Riegler. Mr. Neiger further confirmed in his recent deposition that he specifically asked Mr. Schelhas to copy Cambria's language, despite the fact that Ms. Balavitch provided three different options that did not include Cambria's language.

21. Upon information and belief, Lakeside developed signage bearing the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD" and installed it at its facilities no later than November 2014. Lakeside contends that this installation and usage at its facilities in November 2014 constitutes Lakeside's first public use of the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD."

22. Upon information and belief, around June 2015 Lakeside began efforts to further use the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD" on its company vehicles, including on vehicle stickers. Lakeside intended that such vehicle advertisements would "reflect the same messaging as the signs [] made for the shop." Upon information and belief, the "signs [] made for the shop" refers to the signs installed at Lakeside's facilities bearing the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD."

23. Upon information and belief, around August 2015, Lakeside began using vehicle stickers bearing the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD." In apparent recognition of Cambria's superior rights to the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD," Lakeside's vehicle stickers also featured Cambria's logo adjacent to this phrase.

24.     However, on August 20, 2015, Lakeside applied for trademark protection for the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD." As part of its trademark application, Lakeside represented to the United States Patent and Trademark Office that the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD" was first used at least as early as August 1, 2015 and was first used in commerce at least as early as August 15, 2015.

25.     As part of its trademark application, Lakeside filed a declaration under oath stating it was the owner of the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD." In that same declaration, Lakeside represented to the United States Patent and Trademark Office that "to the best of [its] knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce . . . " Those statements were false.

26.     To support its application, Lakeside submitted the following photo of a Lakeside van using the phrase "The Finest Countertop Makers in the World" positioned above a Cambria logo:



27.     Nowhere in Lakeside's trademark application or in subsequent prosecution did Lakeside reference the fact that Cambria had been using the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" since at least July 2014, including during the time when Lakeside's

7

CEO and President personally toured Cambria's facilities where Cambria's mark was being used. Nowhere in Lakeside's trademark application or in subsequent prosecution did Lakeside describe that the phrase it sought to trademark was copied from Cambria's earlier and publicly-displayed signage. Mr. Neiger and Mr. Schelhas both confirmed in recent depositions that as of September 2014, Lakeside was aware of Cambria's use of the mark at Cambria's facilities. Mr. Neiger also confirmed that Lakeside did not inform the United States Patent and Trademark Office at any point about Cambria's prior usage of the mark. Upon information and belief, Lakeside withheld such disclosures in order to secure registration of the mark.

28. The United States Patent and Trademark Office issued United States Trademark Number 4,957,640 on May 10, 2016 for the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD." The mark was awarded to Lakeside Surfaces, Inc.

29. Since the time of its trademark application, Lakeside has used the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" in commerce to advertise its products and services. As one example, Lakeside posts "Our motivation" on its Instagram account "to be the *Finest Countertop Makers in the World*™ Thank you for being a valued customer!" *See* https://www.instagram.com/p/BUKFH7VjwP_/?fbclid=IwAR1joxIm86o94ZUKwp4e7lQaMe3fh0E1srWtyYgyo8_ehQb--_gGqQoFAcw Lakeside employees have also used the mark in press interviews. *See* https://www.stoneworld.com/articles/89586-lakeside-surfaces-focusing-on-quality-and-customer-service

30. Cambria's business relationship with Lakeside ended in 2018 after Lakeside began selling products from Cambria's competitors including Aurea Stone, 4Elements, MetroQuartz, and LG Viatera. The end of that relationship resulted in litigation filed by Lakeside against Cambria in this district. *See* Case No. 1:18-cv-00110-JTN-ESC.

31. Upon information and belief, Lakeside recently began to offer for sale and sell "Lakeside Exclusive Designs – Limited Edition" "Calacatta Oceania" product, which Lakeside refers to as "Best Seller." Lakeside offers for sale the Calacatta Oceania product through at least the following website: https://www.lakesidesurfaces.com/product/calacatta-oceania/.

32. Lakeside's Calacatta Oceania product features the claimed design of the D'332 patent.

33. Cambria has not authorized Lakeside to copy, reproduce, manufacture, duplicate, disseminate, distribute, sell, offer for sale, or display quartz surface products with the design from the D'332 patent.

**COUNT 1: LAKESIDE'S INFRINGEMENT OF THE D'332 PATENT**

34. Cambria incorporates by reference, as if fully set forth herein, Paragraphs 1-26 of this Complaint.

35. On February 28, 2017, the United States Patent and Trademark Office duly and legally issued the D'332 patent.

36. The D'332 patent is directed to an "an ornamental design for a slab" as shown in the sole figure of the D'332 patent.

37. Cambria is the owner of the D'332 patent by assignment.

38. Lakeside has made, used, sold, and/or offered for sale within the United States and/or imported into the United States, one or more accused products, including, but not limited to, the Calacatta Oceania product. The design of Lakeside's infringing product, in the eye of the ordinary observer who is familiar with the prior art in the field, appears substantially similar to the ornamental design of the D'332 patent.

39. Lakeside has damaged and will continue to damage Cambria in an amount to be

determined at trial.

40. Lakeside has irreparably injured Cambria and such injury will continue unless Lakeside is enjoined by this Court.

**COUNT 2: FRAUDULENT REGISTRATION OF U.S. TRADEMARK NO. 4,957,640 UNDER THE LANHAM ACT, 15 U.S.C. § 1120.**

41. Cambria reincorporates herein and realleges Paragraphs 1-40 above.

42. Lakeside fraudulently registered the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" by omitting material information regarding Cambria's ownership and use of the mark and Cambria's superior rights to the mark.

43. At the time Lakeside applied for its mark, Lakeside represented to the United States Patent and Trademark Office that the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD" was first used at least as early as August 1, 2015 (presumably by Lakeside) and was first used in commerce at least as early as August 15, 2015 (again, presumably by Lakeside).

44. Further, as part of its trademark application, Lakeside filed a declaration under oath stating it was the owner of the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD." In that same declaration, Lakeside represented to the United States Patent and Trademark Office that "to the best of [its] knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce . . . "

45. However, those statements were false and Lakeside knew them to be false at the time it made both statements. Indeed, Lakeside knew at that it was not the rightful owner of the mark.

46. In particular, Lakeside knew of Cambria's ownership of the mark because Lakeside's CEO (Matt Neiger) and President (Rob Riegler) saw Cambria's earlier public use of the mark firsthand during a September 10, 2014 tour of Cambria's facilities.

10

47. After witnessing such public use, Mr. Neiger and, upon information and belief, Mr. Riegler, the next day began pursuit of an identical mark for Lakeside's own use. Lakeside initially used such this identical and infringing mark in signage at its own facilities and later on stickers on its commercial vehicles.

48. At the time Lakeside used the phrase "THE FINEST COUNTERTOP MAKERS IN THE WORLD" in signage at its facility and in stickers on its commercial vehicles, it knew that Cambria possessed superior rights to the mark. Indeed, Lakeside knew that it copied this mark directly from Cambria.

49. Similarly, at the time Lakeside submitted the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" for registration at the USPTO, it knew that Cambria had superior rights to the mark. Indeed, Lakeside knew that it copied this mark directly from Cambria.

50. Lakeside further knew—or had no basis to believe otherwise—that its use of an identical mark on related products and goods could result in a likelihood of confusion. Lakeside, a former distributor of Cambria products, encouraged such confusion by displaying Cambria's logo adjacent to the mark on Lakeside's commercial vehicles.

51. Lakeside, in failing to disclose these facts regarding Cambria's ownership and superior rights to the mark to the USPTO, intended to procure, by fraud and/or material omission, a registration to which it was not entitled.

52. Cambria has been damaged by Lakeside's aforementioned actions such that cancellation of Lakeside's mark is appropriate and warranted.

**COUNT 3: PETITION FOR CANCELLATION OF U.S. TRADEMARK NO. 4,957,640 UNDER THE LANHAM ACT, 15 U.S.C. § 1119**

53. Cambria reincorporates herein and realleges Paragraphs 1-52 above.

54. As described above in Count 5, Lakeside fraudulently obtained its mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD" by omitting material information regarding the source and ownership of the mark. In particular, Lakeside omitted that (1) it first observed Cambria's commercial use of the mark during a tour of Cambria's facilities, (2) that it specifically sought to copy the same mark for its own use, and (3) that despite its knowledge of Cambria's superior rights to the mark, Lakeside omitted this material information in its disclosure to the USPTO and fraudulently certified that Lakeside—not Cambria—had superior rights to the mark.

55. Lakeside's false, material representations of fact made in connection with procuring and maintaining U.S. Trademark No. 4,957,640 have damaged Cambria such that cancellation of the trademark is appropriate and warranted.

56. Cambria thereby petitions this Court for cancellation of U.S. Trademark. No. 4,957,640 on the basis that it was fraudulently registered.

**WHEREFORE,** in consideration of the foregoing, Cambria respectfully requests that this Court enter an Order granting the following relief:

A. Enjoining Lakeside and any person acting in concert with it from further infringement of the D'332 patent pursuant to 35 U.S.C. § 283;

B. Declaring that the D'332 patent is valid, enforceable, and infringed by Lakeside; and

C. Awarding Cambria the profits of Lakeside, in accordance with 35 U.S.C. § 289, resulting from Lakeside's infringement of the D'332 patent, actual damages to Cambria in an amount not less than a reasonable royalty for Lakeside's infringement, and other damages and relief allowed as by 35 U.S.C. § 284:

    (i)    order the removal from the marketplace and destruction of all of Lakeside's products that infringe the D'332 patent;

    (ii)    prohibit Lakeside from further making, using, selling, offering for sale, or importing all of Lakeside's products that infringe the D'332 patent;

    (iii)    order an accounting of Lakeside's profits relating to infringement of the D'332 patent;

    (iv)    order Lakeside to report to this Court of its compliance with the foregoing within thirty (30) days of judgment; and

D.    Declaring this case exceptional under 35 U.S.C. § 285 and awarding Cambria treble its damages for Lakeside's willful infringement and awarding Cambria its reasonable attorneys' fees and costs;

E.    Awarding Cambria injunctive relief under 15 U.S.C. § 1116(a) and Michigan common law and enjoining Lakeside, its officers, agents, servants, employees and attorneys and those others persons who are in active concert or participation with any of the foregoing persons, from:

    (i)    developing, manufacturing, importing, using, marketing, selling or offering for sale, services under the mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," or any variant thereof which is a colorable imitation or otherwise likely to be mistaken for or confused with Cambria's mark;

    (ii)    otherwise infringing on Cambria's mark or using any other trademarks that are confusingly similar to Cambria's mark;

    (iii)    otherwise unfairly competing with Cambria or using any false designations of origin or false description or engaging in any deceptive trade practice, or trading of Cambria's reputation or goodwill, or injuring Cambria's reputation of performing any act which is likely to lead members of the consuming public to believe that any services created, offered for sale or sold by Lakeside are in any manner associated or connected with Cambria or are licensed, sponsored, approved or authorized by Cambria;

F.    Finding that United States Trademark No. 4,957,640 is invalid and unenforceable

13

due to Cambria's priority of use and ordering United States Trademark No. 4,957,640 removed from the Federal Register;

  G. Cancelling United States Trademark No. 4,957,540 pursuant to 18 U.S.C. § 1119 and ordering United States Trademark No. 4,957,640 removed from the Federal Register.

  H. Declaring that Lakeside and any subsidiaries and affiliates be required to take prompt, affirmative action within thirty (30) days of entry of judgment to:

    (i) withdraw from the public and destroy any advertisements or promotional materials which contain or use the infringing mark "THE FINEST COUNTERTOP MAKERS IN THE WORLD," or any confusingly similar marks, in relation to Lakeside's business in the United States; and

    (ii) file affidavits with the Court confirming that these actions have been taken pursuant to 15 U.S.C. § 1116;

  I.

  J. Granting such other relief as the Court deems just and reasonable.

## DEMAND FOR JURY TRIAL

Cambria hereby demands a jury trial on all issues.

Respectfully submitted,

Dated: March 11, 2022

s/ _____
Gregory A. Lewis (P75796)
Matthew J. Gipson (P60169)
PRICE HENEVELD LLP
695 Kenmoor Ave., S.E.
P.O. Box 2567
Grand Rapids, MI 49501
Telephone: 616-949-9610
glewis@priceheneveld.com
mgipson@priceheneveld.com

Of Counsel:

John C. Adkisson
FISH & RICHARDSON P.C.
3200 RBC Plaza, 60 South 6th Street
Minneapolis, MN 55402
Tel: 612-335-5070
adkisson@fr.com
Sundermeir@fr.com

***Attorneys for Plaintiff***
***Cambria Company LLC***

15