IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CAMBRIA COMPANY LLC,<br><br>                                          Plaintiff,<br><br>v.<br><br>LAKESIDE SURFACES, INC.,<br><br>                                          Defendant. | C.A. No. 20-cv-508 (JMB/PJG)<br><br>**EXPEDITED CONSIDERATION<br>REQUESTED** |

**PLAINTIFF CAMBRIA COMPANY LLC'S EMERGENCY MOTION FOR
<u>PROTECTIVE ORDER AND BRIEF IN SUPPORT</u>**

Plaintiff Cambria Company LLC ("Cambria") brings this motion for a protective order against a subpoena for deposition that Defendant Lakeside Surfaces ("Lakeside") served earlier this week, nearly **<u>five months</u>** after the March 11, 2022 fact discovery deadline in this case. Lakeside's subpoena was not a surprise – Lakeside told Cambria that it was planning to serve its late subpoena and Cambria unequivocally told Lakeside that it needed to obtain leave from this Court to serve it months after the discovery deadline. Yet Lakeside served the subpoena without Court permission, demanding that Cambria's prosecution counsel appear for a deposition later this month.

Both Cambria and Lakeside were before this Court on June 1, 2022. At a hearing on that date, this Court stressed to both parties the importance of diligence in meeting Court-ordered deadlines. Lakeside followed none of that guidance. Rather than proactively obtaining leave from this Court to serve its subpoena five months out of time, Lakeside forged ahead with service and demanded a deposition from Cambria, essentially putting the entire burden on Cambria to file this emergency motion to stop it.

Neither Cambria nor the Court should be in this position. As a result, Cambria respectfully asks this Court for a protective order against Lakeside's belated subpoena and to award Cambria its fees and costs associated with this motion.

## I.   FACTUAL BACKGROUND

### A.   Procedural History

Cambria filed this patent infringement case against Lakeside on June 5, 2020. (*See* Dkt. 1.) In the only count remaining, Cambria accuses Lakeside's Calacatta Oceania product of infringing its United States Design Patent No. 780,332 ("the D'332 Patent").[1] The fact discovery deadline was extended several times by stipulation of the parties and subsequent orders of the Court, with the final fact discovery deadline being March 11, 2022. (Dkt. 49.) Summary judgment motions have been filed and trial is set for December 12, 2022. (*Id.*)

From the day this case was served, Lakeside knew that Fish and Richardson (also Cambria's trial counsel) was the firm that prosecuted the D'332 Patent. From the day this case was served, Lakeside also knew that Fish & Richardson partner Michael Hawkins was the attorney in charge of prosecuting the D'332 Patent. Indeed, Fish and Richardson's name is listed on the front of the D'332 Patent as counsel of record for Cambria. (*See* Dkt. 1, Ex. 1.) The D'332 Patent is publicly available, as is the file history of that patent, which includes correspondence between Mr. Hawkins and the United States Patent Office during the prosecution of the D'332 Patent. All of these documents have been publicly available to Lakeside since at least June 2020 when this case was filed.

---

[1] Previously, Cambria had also included counts against Lakeside related to allegations related to trademark infringement. Cambria dismissed all of those counts with prejudice and Judge Beckering granted the dismissal on June 27, 2022. (Dkt. 115.)

### B.      Correspondence Prior to Lakeside Serving its Subpoena

On July 25, 2022, a full four months after the fact discovery deadline in this case, Lakeside's counsel sent Cambria's counsel an email attaching a subpoena for documents and deposition testimony. (*See* Ex. 1 at 5.) The subpoena was addressed to Michael Hawkins at Fish and Richardson and asked for production of four categories of documents no later than August 19, 2022. (*See* Ex. 2 at 1; Ex. 3.) The subpoena asked for a "physical inspection of files" that would take place on August 29, 2022, ten days after the requested documents were produced. *See* Ex. 3. In the cover email, Lakeside's counsel stated that it simply was "collecting evidence for use at trial" and asked Cambria's counsel to accept service. (*See* Ex. 1.)

Later that same day, Cambria's counsel responded as follows:

> Fact discovery closed on March 11. We will not accept service unless and until Lakeside receives leave from Magistrate Judge Green to serve this outside of the fact discovery period established by the Court.
>
> To the extent that you proceed with service, we will move to quash before Magistrate Judge Green. We will also seek our fees for having to do so.

(*See* Ex. 1 at 5.)

On July 26, Lakeside's counsel responded, citing a case from the Minnesota Supreme Court, arguing that what it was seeking was "not discovery," and arguing that it did not need to obtain leave from this Court to serve its subpoena. (*Id*. at 4.) Specifically, Lakeside's counsel said the following: ". . . you took the position below that we need to obtain leave of Court before obtaining this discovery. We respectfully disagree, for largely the same reasons – this is not discovery but rather preservation of evidence for trial. We do not believe it is our duty to obtain leave to obtain this testimony since subpoenas are self-executing; thus, whoever receives one

3

must comply with it unless excused, and the burden is on anybody who objects to Lakeside securing this testimony to seek relief." (*Id*.)

Cambria's counsel responded on July 27, citing a case from the District of Minnesota quashing a deposition subpoena that was served outside the fact discovery deadline. (*Id*. at 3.) Cambria's counsel once again told Lakeside that its proposed subpoena was late and that Cambria's counsel would not accept service of the subpoena until Lakeside had received permission to serve it. (*Id*.) Cambria's counsel reiterated that " . . . to the extent you proceed with service of this belated subpoena, we will move to quash it before Magistrate Judge Green and we will seek our fees for having to do so. We do not need further correspondence on this issue and you can consider your meet and confer obligations satisfied." (*Id*. at 3-4.)

Lakeside's counsel responded on July 28, again arguing that the information it was seeking was not discovery. (*Id*. at 1-3.) Cambria's counsel did not respond further.

On August 3, Lakeside formally served its subpoena on Mr. Hawkins. (Ex. 4.) The subpoena served on Mr. Hawkins differed from the subpoena that Lakeside threatened on July 26 in that it did not include a request for documents or an inspection. Rather, the as-served subpoena requested that Mr. Hawkins sit for a deposition on August 30, without an accompanying request for documents or an inspection. (*See id*.) This motion follows.

## II. LAKESIDE'S SUBPOENA VIOLATES THE COURT'S CASE MANAGEMENT ORDER

There is no question that Lakeside's subpoena is late. The fact discovery period ended on March 11, 2022 and this subpoena was served on August 3, 2022, nearly five months after the fact discovery deadline.

Lakeside clearly could have served this subpoena within the fact discovery period. As noted above, both Fish and Richardson and Mr. Hawkins were well known to Lakeside during the entirety of the fact discovery period – indeed, Fish and Richardson's name is on the front of the D'332 Patent and Mr. Hawkins is prominent in the publicly-available file history of the D'332 Patent. (*See e.g.,* Dkt. 1-1, Ex. A; Dkt. 109-2, Ex. 2 at CAMBRIA_00000189.) As such, Lakeside knew about Mr. Hawkins' involvement for more than two years and yet chose not to pursue him as a fact witness during fact discovery.

In correspondence leading up to this motion, Lakeside argued that its subpoena of Mr. Hawkins is not fact discovery, but rather that Lakeside is simply taking the deposition of Mr. Hawkins (who is located in Minnesota) to "preserv[e] testimony for use at trial." (*See* Ex. 1 at 4.) That is nonsense. By Lakeside's logic, any party could take any deposition of any fact witness located outside the Western District of Michigan any time prior to trial – and in contravention of the Court's scheduling order – by simply arguing that the deposition was to "preserve evidence for trial."

During the meet and confer process, Cambria brought to Lakeside's attention that the District of Minnesota had explicitly rejected the argument that Lakeside is making. (*See* Ex. 1 at 3 (citing *Henningsen v. City of Blue Earth*, No. 14-4482 (ADM/HB), 2016 WL 11002159 (D. Minn. Sept. 20, 2016).) In *Henningsen*, a party attempted to depose an out of state witness well beyond the fact discovery period established by the Court. *See Henningsen*, 2016 WL 11002159 at *2-4. Like Lakeside, the proponent of the deposition argued that the proposed deposition was a "trial deposition" and that the fact discovery deadlines in the Pretrial Scheduling Order did not apply. *Id*. at *2-3. The District of Minnesota rejected that argument, noting that "other judges in this District have concluded that the deadline set in a pretrial scheduling order for the conclusion

5

of fact discovery applies to fact depositions of all kinds, regardless of the purpose for which they are taking." *Id.* at *2 (citing *Henkel v. XIM Products, Inc.*, 133 F.R.D. 556, 558 (D. Minn. 1991) and *Insignia Systems, Inc. v. News Am. Mkg. In-Store, Inc.*, No. 04-cv-4213 (JRT/AJB), 2011 WL 282632 (D. Minn. Jan. 26, 2011)). The Court in *Henningsen* further found that the proponent of the deposition "was aware at least three months prior" to the end of fact discovery that the witness at issue was not within the subpoena power of the Court, and the Court quashed the proposed subpoena. *Id*. The exact same situation presents itself here – Lakeside knew during the entirety of the fact discovery period about Mr. Hawkins. For whatever reason, Lakeside simply made the strategic decision not to depose him. The fact that Lakeside regrets that decision now does not equate to the good cause required to excuse noncompliance with this Court's Scheduling Order.[2]

### III. THIS COURT CAN GRANT A PROTECTIVE ORDER AGAINST LAKESIDE'S BELATED SUBPOENA

In correspondence leading up to this motion, Lakeside's counsel suggested that this Court does not have jurisdiction over this dispute. (*See* Ex. 1 at 3.) Lakeside is correct that under Fed. R. Civ. P. 45(d)(3), a motion to quash a subpoena must be brought in the district in which compliance is required – in this case, the District of Minnesota. But under Fed. R. Civ. P. 45(f), Cambria may also ask the District of Minnesota to transfer any subpoena-related motion to the

---

[2] Since Lakeside obtained new counsel on April 19 this pattern has repeated itself – Lakeside has tried to "redo" issues well past the court-ordered deadlines for doing so. As one example, Lakeside served two expert reports after the deadline in the scheduling order for submitting expert reports. This past week, Lakeside said that it would ask the Court to hold a *Markman* hearing, despite the fact that both parties expressly told Judge Maloney in May 2021 that a *Markman* hearing was unnecessary. Cambria expects that there will be further motion practice on both of these issues in short order.

issuing court (in this case, the Western District of Michigan) "if the person subject to the subpoena consents or if the Court finds exceptional circumstances." Fed. R. Civ. P. 45(f). To the extent that the Court does not resolve this motion prior to the date Lakeside has listed for compliance – August 30, 2022 – Cambria will be required to file a motion to quash in the District of Minnesota and Cambria will ask that Court to transfer that motion back to this Court.

Meanwhile, Fed. R. Civ. P. 26(c)(1) allows Cambria to bring this motion for a protective order in this Court. Under Rule 26, "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). One of the rationales for a protective order specifically enumerated in Fed. R. Civ. 26(c)(1) is that the Court may "forbid[] the disclosure or discovery," which is precisely what Cambria is asking the Court to do here.[3]

Cambria is bringing its motion in this Court for two reasons – first, this Court is intimately familiar with the facts of this case and the scheduling order that governs it. Second, bringing this motion now has the potential to streamline this issue and avoid the parties having to brief this issue twice, both in Minnesota and in this Court. This Court is fully equipped under Rule 26 to decide this motion now.

### IV. CAMBRIA SHOULD BE AWARDED ITS FEES FOR BRINGING THIS MOTION

Lakeside blatantly violated this Court's scheduling order by serving this subpoena. Even after Cambria asked Lakeside to withdraw the subpoena (or at least obtain permission from the

---

[3] In addition to its untimeliness, Lakeside's subpoena for testimony from Cambria's patent counsel regarding the filing of the patent application means that most, if not all, of the testimony Lakeside seeks will likely be protected by the attorney-client privilege. See Fed. R. Civ. P. 45(d)(3)(A)(iii).

7

Court to serve it), Lakeside doubled down, served the subpoena anyway and demanded that Cambria take immediate action to stop it.  Simply put, this is not a motion that Cambria should have been forced to bring.

Fed. R. Civ. P. 37(b)(2) allows for sanctions against a party who "fails to obey an order entered under Rule 26(f)[.]"  Upon a finding that Lakeside violated a Court order (in this case, the Court's Scheduling Order), this Court "may issue further just orders."  Fed. R. Civ. P. 37(b)(2).  Rule 37(b) further states that "the court must order the disobedient party, the attorney advising the party, or both to pay the reasonable expenses, including attorneys' fees, caused by the failure, unless the failure was substantially justified or that other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

Here, there is no justification for Lakeside's decision to serve a subpoena five months after the fact discovery deadline.  This Court has repeatedly stressed the importance of adhering to Court-ordered deadlines, most recently at the June 1 hearing.  (*See, e.g.*, Dkt. 96 at 5:14-19, 6:20-7:10.)  Cambria asks that the Court award it its attorneys' fees and costs in having to file this emergency motion.

V.     **CONCLUSION**

Cambria respectfully requests that the Court enter a protective order on Cambria's behalf against the subpoena served by Lakeside on August 3, 2022.  Cambria further requests that the Court award Cambria its reasonable attorneys' fees and costs for having to bring this motion.

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel for Cambria certifies that this Emergency Motion for Protective Order and Brief in Support contains 2350 words as defined by W.D. Mich. L.Civ.R. 7.3(b)(i). This word count was generated by Microsoft Word 2016.

Dated: August 4, 2022

PRICE HENEVELD LLP

/Matthew J. Gipson/
Gregory A. Lewis (P75796)
Matthew J. Gipson (P60169)
695 Kenmoor S.E., P.O. Box 2567
Grand Rapids, MI 49501
Tel: 616-949-9610
glewis@priceheneveld.com
mgipson@priceheneveld.com

Of Counsel:

John C. Adkisson
FISH & RICHARDSON P.C.
3200 RBC Plaza, 60 South 6th Street
Minneapolis, MN 55402
Tel: 612-335-5070
adkisson@fr.com

Grayson P. Sundermeir
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Tel: 302-652-5070
sundermeir@fr.com

*Attorneys for Plaintiff*
*Cambria Company LLC*